Harney v. The Ind'polis, Crawfordsville, and Danville R. R. Co. and Others.

its effect, was a similar question. It would be a doctrine fraught with consequences of incalculable mischief, if a public officer could be held personally responsible, either civilly or criminally, for his judgment upon such questions. See *Weaver v. Devendorf*, 3 Denio, 117, and the authorities there cited. It is the city, and not the officer, that must be held responsible for the injury, if any has been done, which involves responsibility.

Judgment reversed; cause remanded, with directions to sustain the demurrer to the complaint.

*A. Iglehart* and *C. Denby*, for appellants.

HARNEY v. THE INDIANAPOLIS, CRAWFORDSVILLE, AND DANVILLE RAILROAD COMPANY and Others.

COUNTY.—*Donation to Railroad.*—A county has no lawful power to make an appropriation from its treasury, by way of donation to a railroad company to aid in the construction of its road, without affirmative legislative enactment expressly or by fair implication granting such authority.

SAME.—There was no such statute in this State in June, 1867; and an order of the board of commissioners of a county, at that date, making such an appropriation was void.

SAME.—*Injunction.—Tax Payer.*—A tax payer of the county, by virtue of his being such, has such an interest in funds belonging to the county treasury as enables him to maintain a suit to enjoin the delivery thereof to a railroad company under such an order of the board of county commissioners.

SAME.—*Practice.—Appeal.*—It is not necessary, in such case, for the tax payer to appeal from such void action of the board of commissioners.

APPEAL from the Montgomery Circuit Court.

FRAZER, C. J.—The complaint shows that the appellant is a tax payer of Montgomery county; that the Indianapolis, Crawfordsville, and Danville Railroad Company is a private corporation, organized to construct a line of railroad

through the county of Montgomery; that the county, having in its treasury, in cash and demands due, the sum of about one hundred and seven thousand dollars, of which sum sixty-five thousand eight hundred and ninety-five dollars and fifty-nine cents was in notes and mortgages for money loaned, on the 29th of June, 1867, by the board of commissioners, entered of record an order, as follows:

"It is ordered that the sum of one hundred and twenty-five thousand dollars be, and the same is now, donated to the I., C., & D. R. R. Co., to be used in grubbing, grading, bridging, and putting on the ties for the track of the road from Crawfordsville to Indianapolis; that said money is not to be used for any other purpose than as above; that said donation shall be placed by said company in Elston Bank, under the control of Major I. C. Elston, Sen.; and that a sum not exceeding fifty thousand dollars shall be drawn out by said company until the entire line * * is made ready for iron. And it is further ordered that the county auditor draw warrants on the county treasurer for fifty-seven thousand dollars, and deliver, with the bonds and mortgages in his hands belonging to the county, amounting to sixty-five thousand eight hundred and ninety-five dollars and fifty-nine cents, to Major I. C. Elston, for the purpose above named." It was further averred, that said notes and mortgages, amounting, with accrued interest, to sixty-eight thousand dollars, had been, together with a warrant on the county treasury for fifty-seven thousand dollars, placed in the hands of Elston, in execution of the order of the board; that the treasurer was paying money to said Elston upon the warrant, as fast as it came into the treasury; and that said Elston would dispose of the means so placed in his control as provided in the order donating the same. The relief specially sought was an injunction restraining the execution of the order of the commissioners.

The error assigned is, that the court below sustained a demurrer to the complaint.

The question before us does not involve a consideration

of the wisdom or policy of the proposed municipal aid to secure the construction of an important thoroughfare, deemed, we doubt not, of great local advantage to a large part of the citizens of Montgomery county. That inquiry was not presented by the demurrer.

The position maintained by the appellant is, that the board of commissioners had no lawful power to make such an appropriation out the county treasury, and hence, that in doing so they exceeded the authority conferred upon them by law.

The counties are corporations created for the purpose of convenient local municipal government, and possess only such powers as are conferred upon them by law. They act by a board of commissioners, whose authority is defined by statute. One of the powers conferred is, to collect taxes levied upon the people and property within the county. In the disposition of the money thus collected into its general treasury, the board has not unlimited discretionary choice as to the objects upon which it shall be expended. It can only be applied to certain specified objects, and the building of railroads is not one of these objects, or necessary to carry into effect any of the purposes for which such corporations were created.

The statutes defining the powers, both corporate and judicial, of boards of county commissioners, enumerate the powers given with care; so that there is little room for doubt as to the extent of those powers. If the authority attempted to be exercised in this instance had been conferred, the statute giving it would not have escaped the attention of the learned counsel representing the appellees, whose carefully prepared printed argument so well attests the skill and industry to which the important interests of his clients have been committed. But no such statute is brought to our attention. The initial point of the argument is taken from Kent, viz., that "public corporations are such as are created by the government for political purposes, as counties," &c.; "they are invested with subordinate legislative powers, to be ex-

ercised for local purposes connected with the public good," &c. 2 Com. 275. A further step in the process of reasoning is, that appropriations for the public good may be made, as incident to the object of the creation of such corporation, unless such appropriations are prohibited by statute or the constitution; and, finally, that this, being for the public good and not prohibited, was therefore authorized. But this argument assumes, at the start, what is not true, as we think. While it is undoubtedly true, that municipal corporations, in common with all other instrumentalities of government, are established for the public good, it is not true that they are ordinarily left at liberty to exercise an unlimited discretion in accomplishing that object, or that they are possessed of that discretion unless there is an express limitation imposed. The power to collect money by the imposition of taxes is a high sovereign power, and it is not to be assumed that the legislature has delegated that power to municipalities for discretionary purposes where it has named the purposes for which the money must or may be expended. Such enumeration of objects of expenditure would, according to all authority, exclude objects not enumerated or implied. It need not be controverted that the legislature could clothe counties with power to make such donations as was here attempted. That is not the question before us. Has it been done? Unless the statute-book shows affirmatively that it has been done, expressly or by fair implication, the conclusion is irresistible that the action of the board of Montgomery county was without authority of law, and therefore void. There is no such statute.

But it is contended that a tax payer has no such interest in the funds belonging to the county treasury as will enable him to maintain a suit to prevent unlawful appropriations thereof. We cannot regard this question as open to further discussion in this court. It has been a common remedy in this State, and has been sanctioned by repeated judgments here. *Lafayette* v. *Cox*, 5 Ind. 38; *Oliver* v. *Keightley*, 24 Ind. 514. It has been sanctioned elsewhere. *New*

*London* v. *Brainard*, 22 Conn. 552. It is sanctioned by established principles, acted upon and recognized everywhere. The citizen may not be able to protect himself in any other way. If this is not his remedy, he has none. The money drawn from him by taxation may be squandered by unlawful donations to forward all manner of visionary schemes; other contributions may be wrung from him from year to year and wasted in the same way, in defiance of laws carefully framed for his protection, and he would nevertheless be helpless. A more proper case for injunction cannot be well conceived than that in which a tax payer seeks to protect from lawless waste a public fund, which, when dissipated thus, the law will with strong hand compel him to replenish. See *Gifford* v. *N. J. R. R. Co.*, 2 Stock. 171.

Nor was it necessary to appeal from the action of the board of commissioners. If we are correct in the opinion that there was no authority of law by virtue of which the commissioners could act as they did, then their action was void, and all who attempted to carry it into execution were proceeding without authority, exactly as if no such order had been entered by the commissioners.

It is urged, however, that the order of the commissioners has been fully executed and performed; and that consequently an injunction would be wholly ineffectual to prevent the mischief sought to be arrested. We do not so understand the averments of the complaint. It is true, that the donation is in terms made *to* the railroad company, and it is provided that *it* shall place the fund donated in the bank under Elston's control; but it must not escape notice that the notes and mortgages and the warrant on the treasury were directed to be, and accordingly have been, delivered by the auditor to Elston, for the purpose mentioned in the order, that is, to be by him paid to the railroad company when the condition shall be performed upon the happening of which such payment is to be made; and that the whole remains under Elston's control. These facts ap-

pearing by the allegations of the complaint, must, on demurrer, be regarded as true. The state of the case, then, is, in brief, that the whole is yet the property of the county, existing in specie, but unlawfully in Elston's custody and control; and we see no difficulty in making an injunction effective to stop it where it is, and prevent the full consummation of the unlawful proceeding.

Reversed, with costs; and cause remanded, with directions to overrule the demurrer.

GREGORY, J.—I think that the sole ground of equity jurisdiction in this class of cases is that of *trust*.

*D. E. Williamson* and *A. Daggy*, for appellant.

*J. M. Butler, S. C. Willson, J. E. McDonald, A. L. Roache, A. Thompson*, and *B. T. Ristine*, for appellees.